Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a nonveteran, sues for back pay allegedly due him as a result of an improper discharge and restoration by his agency. The case arises on cross-motions for summary judgment.
*628 From the petition, briefs and exhibits the following facts are disclosed: Plaintiff, on January 30, 1951, received an indefinite appointment as Warehouseman, Job No. 118, Grade 8, (2). On August 29, 1953, he was improperly discharged. He was restored to duty by his agency effective April 14, 1954, and was refused back pay for the period August 29,1953, to April 14, 1954, for the reason he was an indefinite employee and did not possess civil service status.
Plaintiff brings this action under the terms of section 6 (a) and 6 (b) of the Lloyd-La Follette Act, 5 TJ.S.C. 652.
Under section 6(a) of the Lloyd-La Follette Act, supra, “no person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service * *
Section 6(b) of said Act provides that any person removed or suspended without pay under section 6(a) and later restored to duty on the ground that such removal or suspension was unjustified or unwarranted shall be paid for the period he received no compensation.
At the time of plaintiff’s appointment there was in effect the Whitten amendment, 64 Stat. 1066, which provided that all appointments after September 1, 1950, and during the fiscal year 1951 should be indefinite appointments. The reasoning and purpose of Congress in enacting the Whitten amendment is obvious. As a natural consequence of war, more than a normal amount of employees was necessary. After cessation of hostilities, naturally the inflated employees rolls would be no longer needed. Hence the Whitten amendment was designed to give the various agencies the right to discharge employees under these circumstances.
Civil Service Regulation 2.115(a), 5 C.F.R. (1952 Supp.) 2.115 (a), provided as follows:
Indefinite appointment — (a) In general. On and after December 1, 1950, all new appointments shall be indefinite appointments except those of postmasters in all classes of post offices and, in unusual circumstances, appointments to positions for which the Commission determines that probational appointments are in the interest of the service: Provided,, that agencies may give *629 probational appointments after that date to eligibles who were regularly selected from certificates issued prior to December 1,1950, for probational appointment. Such indefinite appointments shall be made from the Commission’s registers of eligibles unless there are insufficient available eligibles. The Commission may restrict certification for indefinite appointment to eligibles that are immediately available because of residence or other conditions. The first year of service under an indefinite appointment shall be a trial period similar to the probationary period established by ,§ 2.113. Persons given such appointments do not thereby acquire a permanent civil service status.
Thus, under the Whitten amendment and the Civil Service regulation in effect plaintiff could only have received an indefinite appointment. The sole question then is whether as a result of this indefinite appointment plaintiff was in the “classified civil service” and as such is entitled to the benefits of the Lloyd-La Follette Act, supra.
In applying section 6(b) of the Lloyd-La Follette Act, the Comptroller General and the Civil Service Commission have interpreted the phrase in section 6(a) “in the classified civil service of the United States” to mean a person who occupies a position in the Civil Service and has competitive status. This interpretation is based upon the Act of March 27,1922,42 Stat. 470, which provides:
* * * That in the administration of the civil service retirement Act approved May 22, 1920, the expression “all employees in the classified civil service of the United States,” as used in section 1 thereof shall be construed to include all persons who have been heretofore or who may hereafter be given a competitive status in the classified civil service, with or without competitive examination, by legislative enactment, or under the civil service _ rules promulgated by the President, or by Executive orders covering groups of employees with their positions into the competitive classified service or authorizing the appointment of individuals to positions within such service.
The expression “classified civil service” as the same occurs in other Acts of Congress shall receive a like construction to that herein given.
*630 It is noted that by the terms of the above-quoted act persons in the “classified civil service” include persons who have or may be given a eompetitime status.
Thus, clearly under the Act of March 27, 1922, supra, the President, acting through the Civil Service Commission, was entitled to make regulations prescribing what employees should be considered to be in the classified civil service, and the Civil Service Commission did issue Eegulation 2.115(a), supra, to the effect that indefinite employees should not be considered to be in the classified civil service.
Competitive status has been defined as “one which permits promotion, transfer, reassignment or reinstatement without competitive examination.” Bailey v. Richardson, 182 F. 2d 46, 53.
Therefore, as stated earlier, under the Whitten amendment and Civil Service Eegulation 2.115(a), supra, plaintiff’s appointment was and could only have been indefinite, and as such he did not acquire competitive status, which was necessary to put him in the “classified civil service” as required by section 6(a) of the Act. Bailey v. Richardson, supra; Cf. Nadelhaft v. United States, 132 Ct. Cl. 316.
Furthermore, in order to meet the criterion of being in the classified civil service under the Act of March 27,1922, supra, plaintiff must have had a “competitive status” which he did not and could not have under the statute and regulations.
Not being in the “classified civil service” as required by section 6(a) of the Lloyd-La Follette Act, supra, plaintiff is not entitled to the benefits of section 6 (b) of said Act.
Defendant’s motion for summary judgment is granted and plaintiff’s motion is denied. The petition is dismissed.
It is so ordered.
Durfee, Judge; Whitaker, Judge, and Jones, Chief Judge, concur.