Per Curiam;
This case was referred pursuant to Rule 37(e) to Saul Richard Gamer, a trial commissioner of this court, with directions to make his recommendation for conclusion of law on defendant’s motion for summary judgment. The commissioner has done so in an opinion filed July 5, 1963, wherein he recommended that defendant’s motion for summary judgment be denied. Defendant has failed to file a request for review by the court of the commissioner’s recommendation for conclusion of law pursuant to the provisions of Rule 37(e) (4) and the time allowed for the filing of such request for review has expired. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, defendant’s motion for summary judgment is denied.
*75 OPINION OF COMMISSIONER
Plaintiff, a non-veter an, was employed by the Air Force at its Base in Madrid, Spain, as a civilian “law clerk-interpreter.” Approximately 6 weeks later he was discharged for inefficiency. His petition claims that his dismissal was invalid because, for various specified reasons, it was arbitrary and capricious, and that he is therefore entitled to back pay.
Defendant moves for summary judgment, contending that, since plaintiff was, when discharged, still in his 1-year probationary period and serving under an “Excepted Appointment,” he was not protected by the procedures or back pay provisions of any statute. It says that plaintiff’s situation was covered only by certain then outstanding Air Force regulations; that his separation was effected in full compliance with the procedural requirements thereof; and that, in such circiunstances, the court lacks jurisdiction to review the merits of the agency’s determination that plaintiff should be dismissed because he was not qualified for the position to which he had been appointed. Plaintiff contests the motion, insisting he is entitled to a trial not only on the arbitrary and capricious issue, which he further buttresses by various allegations contained in his opposing brief, but also on the grounds that the procedural requirements specified by the pertinent departmental regulations were not followed.
When discharged, plaintiff was, as defendant points out, in an excepted appointment and still in his 1-year probationary period. Ordinarily such employees are subject to summary dismissal since they do not have civil service status. The Lloyd-La Follette Act, as amended, 5 U.S.C. 652, which details the basis for dismissing non-veteran Government employees and the procedural requirements to be followed in connection therewith, and which also provides for back pay for unwarranted dismissals followed by reinstatement, protects only employees in the “classified civil service.” London v. United States, 159 Ct. Cl. 398 (1962); Moyer v. United States, 150 Ct. Cl. 627 (1960); Day v. United States, 143 Ct. Cl. 311 (1958); Bander v. United States, 141 Ct. Cl. 373,158 F. Supp. 564 (1958), cert. denied, 358 U.S. 855; Nadelhaft v. *76 United States, 132 Ct. Cl. 316, 131 F. Supp. 930 (1955); Chollar v. United States, 130 Ct. Cl. 338, 126 F. Supp. 448 (1954). But see Thomas v. United States, 153 Ct. Cl. 399, 289 F. 2d 948 (1961). But where an agency promulgates duly authorized regulations concerning probational employees which specify the manner in which their employment is to be terminated, a severance effected without substantial compliance with such regulations is invalid. Watson v. United States, 142 Ct. Cl. 749, 162 F. Supp 755 (1958); Daub v. United States, 154 Ct. Cl. 434, 292 F. 2d 895 (1961). This is merely another application of the basic principle that separations made in a manner that do not conform with the requirements of a valid departmental regulation are not lawful. Service v. Dulles, 354 U.S. 363 (1957) ; Starzec v. United States, 145 Ct. Cl. 25 (1959); Newman v. United States, 143 Ct. Cl. 784 (1958). And in such instances, reinstatement to the position is not a prerequisite to the recovery of back pay. Newman v. United States, supra, at 794. This court has “repeatedly held that even where no reinstatement has been ordered judgment for back pay may be given if the facts of the case justify such action.” Thomas v. United States, supra, p. 402, and cases there cited.
Thus, were it to appear here that there was a substantial violation of the procedural requirements specified in the pertinent regulations, the court could, in the interests of the expeditious disposition of the litigation, summarily order an appropriate back pay judgment for plaintiff despite his failure to cross-move, since in such instance a trial on the arbitrary and capricious issue would be academic. American Auto Insurance Co. v. Indemnity Insurance Co., 108 F. Supp. 221, 224 (D.C.E.D. Pa., 1952); Hennessey v. Federal Security Administrator, 88 F. Supp. 664, 668 (D.C. Conn., 1949); Northland Greyhound Lines v. Amalgamated Ass’n., 66 F. Supp. 431, 433 (D.C. Minn., 1946); Hooker v. New York Life Ins. Co., 66 F. Supp. 313 (D.C.U.D. Ill., 1946), cert. denied, 332 U.S. 809.
However, a review of the procedure adopted in discharging plaintiff does not indicate such deviations from the requirements of the pertinent regulations as would cause the dismissal to be invalid. The Air Force at the time herein *77 involved did promulgate various regulations concerning probationary employees. One regulation provides that such an employee being separated for inefficiency is entitled to advance notice with a statement of reasons, the right to reply, and a notice of final decision.[1] In compliance therewith, plaintiff was given such a notice, he did submit a reply, and he received a notice of final decision. Another pertinent regulation addressed itself to the number of days of advance notice required to be given prior to dismissal, and it is about this regulation that most of the procedural controversy seems to revolve. Paragraph 2 of this regulation[2] provided:
2. Effective Dates.
a. Effective dates will be set to allow an employee as much advance explanation and notice as possible. Except for the minimum 30 days advance notice requirements in Part 22 and Section 4 of this chapter for a change to lower grade, it is desirable to allow at least fourteen (14) calendar days advance notice in establishing the effective date of an action. If the facts and circumstances of the case make it undesirable to allow the full fourteen (14) calendar days advance notice, a lesser period is permissible. However, in no case will the effective date be earlier than the minimum time allowed for the employee to reply to the advance notice and the day after the employee receives the notice of final decision. * * *
Plaintiff did not receive 14 days’ advance notice. He received only 9 days. He was advised on December 2, 1959, by an advance notice letter that his proposed separation was to be effective at the close of business on December 11, 1959. The letter set forth the reasons for the proposed action, and advised plaintiff of his right to reply. After plaintiff replied on December 9,1959, he was notified on December 11, *78 1959, by a letter of final decision, that his separation was to be effective at the close of business on that same day.
Plaintiff argues that under the regulation a 14-day period is mandatory and that “a lesser period is permissible” only “if the facts and circumstances of the case make it undesirable to allow the full fourteen (14) days.” Plaintiff points out, quite correctly, that defendant makes no explanation whatsoever as to why in his case it was deemed so important to deprive him of the benefit of the full 14 days.
However, the regulation states that the 14-day period is “desirable” and that if “undesirable,” “a lesser period is permissible.” It is difficult indeed to import mandatory connotations into such words as “desirable” and “permissible.” It would seem that the regulation was designed to permit a certain measure of discretion in this respect. The regulation fixes a floor beyond which the effective date cannot be reduced, i.e., “the minimum time allowed for the employee to reply to the advance notice and the day after the employee receives the notice of final decision.” Since the intent seems to have been that the effective date was not to be fixed prior to the last day of the advance notice period,[3] the minimum effective date thus also fixes the minimum advance notice period. Paragraph 3 of the regulation fixed the minimum time to reply as 5 working days. Thus, if at least one day thereafter is added for the service of the notice of final decision, and, as was seemingly intended, an additional day “after” such receipt, the minimum time it would seem possible to fix in advance would be 7 days for the effective date. Furthermore if, at the particular installation or in connection with the job involved, Saturday and Sunday are not workdays, and since in such case it is not possible to have 7 workdays without an intervening weekend period of 2 days, it would seem that in such instances the minimum time resulting under the formula specified by the regulation would as a practical matter be 9 days for the effective date. It thus appears clear that the regulation suggests 14 days’ advance notice as “desirable,” but gives leeway to the respon *79 sible officials to reduce the 14-day period, if they consider such a period as “undesirable,” to a period as low as 9 days (or possibly even lower in some instances). Plaintiff did receive 9 days. While the regulation is something less than a model of clarity, this construction seems to comport with the more natural reading of the provision. And the fact that probationary employees are being dealt with strengthens this more flexible interpretation.
Another deviation from the regulations upon which plaintiff relies involves the relationship of the effective date of the discharge to the date of his receipt of the notice of final decision. On this matter, as hereinabove shown, paragraph 2 of the regulation provided that “* * * in no case will the effective date be earlier than the minimum time allowed for the employee to reply to the advance notice and the day after the employee receives the notice of final decision * * [Emphasis supplied.] As noted, plaintiff received his final discharge notice on December 11, 1959, to become effective at the close of business the same day. He claims that under the above provision, the effective date should have been December 12 which was the day after he received the notice of final decision.
Under the regulation, it would appear that, in view of the service of the final notice on December 11,1959, the effective date should have been postponed one day to December 12. However, it seems plain that such a defect would not serve to invalidate the discharge. It affected in no way the basic rights afforded to plaintiff of receiving an advance notice of sufficient duration, of having an opportunity to reply, and of receiving a notice of final decision. Cf. Taylor v. United States, 131 Ct. Cl. 387 (1955).
Where, as was evidently the situation here, the reviewing officer finds that he needs more time to consider the employee’s reply than was originally anticipated, whether because of its length (plaintiff’s answer here was over 70 pages) or for other reasons, there would seem to be no reason why the effective date originally set cannot be postponed without affecting the validity of the entire discharge proceeding. Such postponement does not abridge any of the employee’s basic rights and indeed only serves to benefit him, *80 for he not only receives the advantage of a longer consideration of his case,[4] but he also stays on the payroll that much longer.[5]
[6]Under the regulation, the effective date originally set for December 11 should, by virtue of the delayed service of the final notice on that day, have been postponed to December 12, thus entitling plaintiff to one more day’s pay. Judgment^ therefor will provide what the agency should have given.
It is not every deviation from specified procedure, no matter how technical or regardless of its basic nature, that automatically serves to invalidate a discharge. Taylor v. United States, supra; DeBusk v. United States, 132 Ct. Cl. 790 (1955), cert. denied, 350 U.S. 988; Queen v. United States, 137 Ct. Cl. 167 (1956); Bryan v. United States, 128 Ct. Cl. 541 (1954); Ciaffone v. United States, 126 Ct. Cl. 532 (1953). The kind of deviation herein involved more nearly resembles the situation in Taylor, where, as in the instant case, the employee received all his basic rights of sufficient advance notice, an opportunity to reply, and a notice of final decision, but was wrongfully deprived of 30 days’ pay (by being involuntarily placed on annual leave during the notice period) than it does in the case of Stringer v. United States, 117 Ct. Cl. 30, 90 F. Supp. 375 (1950), upon which plaintiff relies, where the advance notice was of insufficient duration (albeit by only one day) and was otherwise defective, the employee was not given any proper notice of final decision, and there were other irregularities, such as the failure to afford the employee, a veteran, with the right to answer personally. In Taylor, the court made the employee whole by granting him a judgment for the 30 days’ pay of which he was deprived, but the discharge itself was nevertheless sustained.
Accordingly, defendant’s contention that in plaintiff’s case *81 there was no such procedural defect as would cause the invalidation of plaintiff’s discharge should be sustained.
However, it does not follow, as defendant maintains, that this ends the case and that the petition should now be summarily dismissed. It is true that where there has been substantial compliance with the procedural requirements, the court has consistently held it will not substitute its judgment for the agency’s as to the employee’s qualifications or the satisfactory nature of his services and thereby become involved in the merits of the discharge. These are discretionary matters necessarily entrusted to the responsible agency officials. Blackmon v. United States, 128 Ct. Cl. 288, 120 F. Supp. 774 (1954); Lawyer v. United States, 147 Ct. Cl. 501 (1959), cert. denied, 362 U.S. 977; Ciaffone v. United States, supra. Nevertheless, where an employee, probationary or otherwise, is by regulation or statute protected in that he is entitled to honest consideration based on the merits, but it is charged that the action of the responsible personnel official or officials was instead arbitrary, capricious, or maliciously motivated, a different situation is presented. Knotts v. United States, 128 Ct. Cl. 489, 121 F. Supp. 630 (1954); Levy v. United States, 118 Ct. Cl. 106 (1950); Gadsden v. United States, 111 Ct. Cl. 487, 78 F. Supp. 126 (1948); Watson v. United States, supra; Daub v. United States, supra. That the Secretary of the Air Force intended by his regulations to give probationary employees protection against arbitrary action is obvious. The requirement that the employee be given a sufficient advance notice which details the reasons for the proposed action, an opportunity to reply, and, after consideration thereof, a notice of final decision, makes this clear. The Secretary’s concern for probationary employees is further demonstrated by another regulation[6] which provided for a “Probationary and Trial Period Evaluation” and “a full and fair tryout.” To assure this, it specified that certain “positive steps must be taken prior to completion of thip period * * * in order to determine whether the employee will be retained in the position or will be reassigned, changed to lower grade, or separated.” These included the provision that the employee’s “performance, conduct, and *82 general character traits” are to be “evaluated continually and discussed with employees frequently during their probationary or trial period.” Supervisors were required to “provide employees with the guidance and assistance necessary for development in the position,” and “any discussion of the employee’s performance, conduct, or general character traits should be straight forward and constructive, and means of effecting improvement will be suggested, whenever needed.”
As defendant points out, naked or general allegations of arbitrary and capricious action are insufficient to create a factual issue warranting a trial. Mayer v. United States, 145 Ct. Cl. 181 (1959); Crump v. United States, 143 Ct. Cl. 804 (1958). Similarly, where the record presented to the court on a motion for summary judgment demonstrates on its face that there was no arbitrary and capricious action, no trial on this issue will be permitted. Mulligan v. United States, 149 Ct. Cl. 415 (1960) ; Eclov v. United States, 137 Ct. Cl. 341 (1957); Crump v. United States, supra; Mayer v. United States, supra.
This case falls in neither category. The allegations of the petition, as supplemented by the allegations contained in plaintiff’s opposition brief, which additional allegations may be considered by the court in weighing a dispositive motion (Moen v. United States, 128 Ct. Cl. 579, 121 F. Supp. 677 (1954); Sheaf Steam Shipping Co. v. United States, 142 Ct. Cl. 379, 382, 161 F. Supp. 616 (1958)), are manifestly sufficient to entitle plaintiff’s being granted his day in court on this issue. hTor is there any appeal or other administrative record (the regulations afforded plaintiff no appeal rights) or any pertinent affidavits presented to the court which would serve to rebut plaintiff’s allegations. These allegations are to the effect that during the brief period of his employment, plaintiff consistently received praise and commendations for his work from his superior, the Staff Judge Advocate, until one day when he was given a certain assignment which he considered to be improper because it would have required him “to perform a dishonest act” (pltf’s br., p. 2); that upon plaintiff’s explanation as to why he considered the assignment improper and impossible to accom *83 plish, the Staff Judge Advocate “became angry” and personally prejudiced against plaintiff, and immediately threatened to effect his discharge; that the very next day the Staff Judge Advocate served plaintiff with a plainly defective notice of separation which advised that plaintiff would be separated for inefficiency in 4 days and which gave him no opportunity to answer — a notice that was superseded only upon plaintiff’s going over the head of his superior and making a personal appeal to the Base Commander; that on plaintiff’s final day, the Staff Judge Advocate, without justification, caused him to be forcibly ejected from the Base; that plaintiff could not receive any honest consideration of his case from this individual, who was merely carrying out his original threat and his predetermined plan to get rid of plaintiff; that it was impossible for this officer to evaluate plaintiff’s lengthy reply fairly in the very short period of time he gave to it; that plaintiff had never received any intimation, as was required by the aforesaid regulation, that any of his work was unsatisfactory, nor did he ever receive any period of indoctrination, or any guidance or evaluation of his work; that, absent any such compliance with the regulation, he failed to receive the “full and fair” trial contemplated by the regulation; that the charges against plaintiff were in fact baseless, and that illustrative of the farfetched nature thereof is the charge criticizing plaintiff’s handling of the legal defense in a Spanish court of a criminal action against an officer stationed at the Base despite the resulting acquittal, and further, despite the fact that, as shown by his job description, plaintiff’s duties as “law clerk-interpreter” did not in any event call for his performing any duties as defense trial counsel.
These allegations are far from the naked and general characterization applied by defendant. As the court stated in Clark v. United States, 145 Ct. Cl. 374 (1959), in overruling defendant’s motion for summary judgment also directed at an employee in an excepted position, there is enough alleged to warrant a trial “for the development of the full facts” (p. 382). In Levy v. United States, supra, it too appeared under the departmental regulations that, as a probational employee, plaintiff was entitled to receive “a full *84 and fair trial on the job.” The court, after considering plaintiff’s allegations that he did not receive such a trial and instead “was discharged in bad faith and by virtue of personal malice” — allegations that were far more general than those herein involved — concluded that the allegations were “enough to bring plaintiff into court” and ordered the case to trial. In so doing, however, the court made plain that at such trial, plaintiff “must assume the full burden of proving the allegations of his petition.”[7] The same admonition, of course, applies here.
It is accordingly recommended that defendant’s motion for summary judgment be denied.

 Air Force Manual (AFM) 40 — 1, Chap. AF S-l, Sec. 4(b), November 8, 1959. (Exhibit 11 to defendant’s motion for summary judgment.)

 Supplement to Appendix A to AFM 40-1, Chap. AF S-1.5, Par. 2a, November 8, 1959. “Appendix A” was a Civil Service Commission regulation (Appendix A to Section 5, Federal Personnel Manual S-l, “Procedures under Section 9.102(a)(1) of the CSC Regulations”) which was incorporated by reference into the Air Force regulations. By Section 5(3) of AFM 40-1, employees otherwise excluded from the procedural protections of Section 5, Chap. S-l of the Federal Personnel Manual, such as those in the excepted service, were “given procedural coverage as provided in Appendix A,” except for the right to appeal to the Commission.

 Paragraph 2b of the regulation provided that: “A suspension or adverse position change will go into effect not earlier than the day ajter the notice period ends.” [Emphasis supplied.]

 Supplement to Appendix A to AFM 40 — l, Chap. AF S — 1.5, Sec. 4, “Consideration of Reply” provided that: “The official to whom the reply is made will consider all facts presented hy the employee and will determine whether the proposed action should stand or be modified.”

 The above-mentioned Civil Service Regulation Appendix A to Section 5, Federal Personnel Manual, which the Air Force adopted hy reference, provided (par. B) that during the notice period the employee should ordinarily be kept on active duty with pay.

 AFM 40-1, AF P4.2, July 15, 1959 (par. 6 (a) and (1>)). (Exhibit 11.)

 After trial, the court concluded that plaintiff’s evidence was insufficient to prove he “was not afforded a full and fair on-the-job trial in the position to which he was appointed or that any of the actions of any of the officials * * * in removing plaintiff * * * was arbitrary or capricious, or taken in bad faith, or as the result of malice or ill will.” Levy v. United States, 125 Ct. Cl. 145, 146-147 (1953), cert. denied, 346, U.S. 931.